Jay T. Jambeck (SBN 226018)
Mandy G. Leigh (SBN 225748)
Damien Troutman (SBN 286616)
LEIGH LAW GROUP, P.C.
870 Market Street, Suite 1157
San Francisco, CA 94102
Telephone:   415-399-9155
Facsimile:   415-795-3733

*Attorneys for Plaintiff,*
JACKLINE MUTHOKA

## IN THE UNITED STATES DISTRICT COURT FOR
## THE CENTRAL DISTRICT OF CALIFORNIA
## (SOUTHERN DIVISION)

JACKLINE MUTHOKA,

       Plaintiff,

 v.

NATIONAL BOARD OF MEDICAL
EXAMINERS,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 8:20-CV-01072-JLS-KES**

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S
APPLICATION FOR A
TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW
CAUSE WHY A PRELIMINARY
INJUNCTION  SHOULD NOT
 ISSUE**

Date:
Time:
Ctrm:   10A
Judge:  Hon. Josephine L. Staton

**FACTUAL BACKGROUND**

Ms. Muthoka, now a United States citizen, grew up in Kenya, under difficult circumstances.[1]  At age 10, Ms. Muthoka's mother died from pneumonia, creating a significant hardship on her family.  In her eleventh-grade year her father died from a cardiac arrest.  Ms. Muthoka and her siblings were forced to work after school to earn income to sustain themselves.  Despite these circumstances, Ms. Muthoka graduated at the top of her high school class and then from Hope International and the University California State University, Fullerton with a degree in Liberal Arts – Pre-medicine, despite significant cultural challenges, and with some informal accommodations.

Plaintiff had difficulty with the Medical College Admission Test (MCAT) and was eventually admitted to the M.D. program at the University of California, Irvine (UCI) Medical School through a conditional program due to the fact that Ms. Muthoka did not receive accommodations on the MCAT.

In August 2016 Plaintiff enrolled at the University of California, Irvine (UCI) Medical School in the M.D. program.  Plaintiff has satisfactorily completed all academic requirements of her to date – with the exception that she has not yet passed Step 1 of the USMLE examination and a surgery shelf examination that was taken around the same time as the USMLE.

Each medical student who intends to obtain a license to practice in the United States is required to take the USMLE.  The USMLE consists of three steps, taken at various stages throughout the progression of a medical education.  Step 1 of the USMLE is taken after the basic science portion of a medical education is completed,

---

[1] The factual background is set forth in the contemporaneously filed declaration of Jackline Muthoka.

generally after the second year of medical school. Plaintiff must pass the USMLE, Step 1 in order to continue with her medical education.

Plaintiff suffers from the mental impairments which constitute disabling conditions of Other Specified Anxiety Disorder-Test Anxiety (DSM V - F41.8) which was diagnosed in February 2017 and later Plaintiff was diagnosed with Other Specified Neurodevelopmental Disorder related to visual processing (DSM V - F88).

UCI has regarded Plaintiff as a person with a disability since February of 2017 and NBME was informed of that fact.  Additionally, NBME itself has regarded Plaintiff as a person with a disability by deeming her eligible for the exact same 50% additional time on testing for the National Subject Exams/shelf examinations.

In the fall of 2017, Plaintiff applied for a testing modification of 50% increased time from Defendant for Step 1 of the USMLE based upon Plaintiff's disabling condition of Anxiety Disorder-Test Anxiety (DSM V - F41.8).

NBME denied Plaintiff's request for a modification on or about January 2, 2018 on the basis that "experiencing anxiety during high stakes tests is not evidence of a disability or a substantial limitation in a major life activity."  Plaintiff thereafter took the USMLE step 1 on May 8, 2018, without modification, and did not pass the examination.

In the fall of 2018, Plaintiff took a remediation USMLE Test preparation course that ended mid-October. On October 31, 2018, Plaintiff took the USMLE Step 1 a second time and did not obtain a passing score.

In the Spring of 2019, Plaintiff again requested from Defendant a reasonable modification of 50% additional testing time for the USMLE Step 1 examination. Plaintiff provided additional documentation via a psychological evaluation which documented her mental impairment of a testing phobia along with the overarching mental impairment of Other Specified Neurodevelopmental Disorder related to

visual processing (DSM V - F88).  The evaluation found that Plaintiff's mental impairments impacted her ability to concentrate, read and comprehend and thus limited her academic achievement.

On or about July 24, 2019, Defendant again denied Plaintiff her requested accommodation, contradicting the professional opinion of Plaintiff's psychological evaluators, and opining, without any similar psychological evaluation of Plaintiff, that Plaintiff's disabling condition in fact did not impact her ability to take tests. Defendant did provide Plaintiff two "arrangements" for the USMLE, Step 1, a separate room and additional break time, which were two of the three accommodations recommended by Plaintiff's psychological evaluators.

Plaintiff sought a reconsideration from Defendant, submitting additional documentation on January 16, 2020.

On April 3, 2020, that request for reconsideration was denied.

Plaintiff is currently scheduled to take the August session of the USMLE Step 1.  If Plaintiff does not pass the step 1 on this sitting, she will be dismissed from UCI for failing the USMLE after three attempts.

## **PROCEDURAL BACKGROUND**

This action was filed on June 15, 2020.  Personal service of the summons, complaint and initial papers was attempted at the Defendant's business address on 6/19 and 6/22 but service failed due to the indefinite closure of the office location. Thereafter, service of the summons, complaint and initial papers was sent via certified mail, return receipt requested on June 23, 2020 and signed for on June 26, 2020.

Pursuant to Federal Rule of Civil Procedure 4(e)(1), a federal summons and complaint may be served by any method available under state law in the state where the district court is located.  Pursuant to California Code of Civil Procedure 415.40, service by certified mail on an out of state defendant is complete on the tenth day

after mailing.  Therefore, service was complete upon Defendant on July 6, 2020 and a responsive pleading is due July 27, 2020.

## LEGAL BACKGROUND

A plaintiff seeking a temporary restraining order or preliminary injunction must establish that she is likely to succeed on the merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008); *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1160 (9th Cir. 2011).

## ARGUMENT

### I.    PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Congress enacted the ADA in order to eliminate discrimination against individuals with disabilities. *See* 42 U.S.C. § 12101(b). The ADA furthers Congress's goal regarding individuals with disabilities: "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[.]" 42 U.S.C. § 12101(a)(8). The ADA contains four substantive titles: Title I relates to employment; Title II relates to state and local governments; Title III relates to public accommodations and services operated by private entities; and Title IV relates to telecommunications and common carriers. *See generally* Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 and 47 U.S.C. §§ 225, 611.

42 U.S.C. § 12189, which falls within Title III of the ADA, governs professional licensing examinations. This section requires entities that offer examinations "related to applications, licensing, certification, or credentialing for ... professional, or trade purposes" to "offer such examinations ... in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. The purpose of this section

is "to assure that persons with disabilities are not foreclosed from educational, professional, or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation." H.R.Rep. No. 101–485(III), at 68–69 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 491–92.

To show a violation of the ADA based on NBME's failure to accommodate, Plaintiff must show (1) she is disabled; (2) her requests for accommodation are reasonable; and (3) that those requests were denied.

A. *Plaintiff is Disabled or Regarded as Disabled by NBME*

Under the Title III regulations, "disability" entitling a person to a reasonable accommodation is defined as:

(i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(ii) A record of such an impairment; or

(iii) Being regarded as having such an impairment as described in paragraph (f) of this section.

28 C.F.R. 36.105(a)(1)(i-iii) (emphasis added).

Here, Plaintiff meets prong (i) of the Title III regulations, and is Therefore "disabled" for the purposes of the ADA.

1. *Plaintiff has a Disability under the ADA*

A three-part test is applied to determine whether a plaintiff has a disability and therefore is entitled to an accommodation under the ADA: (1) whether the plaintiff's condition constitutes a mental or physical impairment; (2) whether the impairment impacts a major life activity; and (3) whether the impairment substantially limits the major life activity. *Wong v. Regents of the Univ. of Cal.,* 410 F.3d 1052, 1063 (9th Cir.2005). The definition of "disability" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  28 C.F.R. § 36.105(a)(2)(i). Additionally, the term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted

1  by the terms of the ADA. "Substantially limits" is not meant to be a demanding
2  standard.  28 C.F.R. § 36.105(d)(1)(i).

3       Testing accommodations in reference to "high stakes" testing is well
4  recognized by the United States Department of Justice which has published
5  technical assistance on the issue.[2]

6       Plaintiff is likely to succeed on the merits of her claim under the ADA for a
7  reasonable accommodation of 50% testing time.  First, Plaintiff's condition
8  constitutes a mental impairment.  A "mental impairment" is defined in part as "[a]ny
9  mental or psychological disorder such as intellectual disability, organic brain
10 syndrome, emotional or mental illness, and specific learning disability."  28 C.F.R. §
11 36.105(b)(ii).

12      Plaintiff underwent an individualized psychological evaluation in February
13 and March of 2019 at the Chicago School of Professional Psychology's Irvine
14 Counseling Center in Irvine, California and submitted the April 1, 2019 report from
15 that evaluation to Defendant.  (Muthoka Decl. at ¶12, Ex. E). The evaluation found
16 that Plaintiff suffered from the mental impairments of Other Specified Anxiety
17 Disorder-Test Anxiety (DSM V - F41.8) which was diagnosed in February 2017 and
18 then Plaintiff was subsequently diagnosed based on the March 2019 psychological
19 evaluation with Other Specified Neurodevelopmental Disorder related to visual
20 processing (DSM V - F88) which the report finds is the progenitor for Plaintiff's
21 testing anxiety.[3]  (*Id.*).  Thus, Plaintiff suffers from a psychological disorder which
22 constitutes a "mental impairment."

23

24 [2] https://www.ada.gov/regs2014/testing_accommodations.html (last visited June 16,
25 2020).
   [3] "Ms. Muthoka displayed significantly weaker performance on tasks which did not
26 require verbal skills, indicating a true visual processing disorder. All of the above
   significantly impacts Ms. Muthoka's academic and emotional functioning,
27 warranting a diagnosis of Other Specified Neurodevelopmental Disorder related to

28

Second, Plaintiff's mental impairment impacts a major life activity. Major life activities "include, but are not limited to . . . concentrating, [and] thinking…."  28 C.F.R. 36.105(c)(1)(i). The April 1, 2019 psychological report finds that "Ms. Muthoka displays significantly slower than expected processing abilities when compared to her relative strength in verbal abilities. This challenge impacts her ability to perform adequately and also produces anxious symptoms which preclude her from being able to maintain concentration on examinations." (Muthoka Decl. at ¶12, Ex. E, p. 17).  Further, Plaintiff's mental impairment "causes her to be unable to focus, have difficulty concentrating, difficulty comprehending, and makes her irritable and upset at times." (Muthoka Decl. at ¶12, Ex. E, p. 18).  Difficulty concentrating and comprehending (thinking) are clearly identified in the Title III regulations, and thus Plaintiff's mental impairments "substantially limit" those major life activities.  28 C.F.R. 36.105(c)(1)(i)

Third, Plaintiff's mental impairment substantially limits the major life activities of concentration and comprehending.  Ms. Muthoka's deficits are weaknesses *relative to the general populace*, and not simply to her medical school colleagues or to USMLE test takers.  The April 1, 2019 psychological report indicated that Ms. Muthoka significantly underperforms in processing speed "as measured by the PSI . . . in the low average range and above those of approximately 10% of her peers" on the Wechsler Adult Intelligence Scale-Fourth Addition (WAIS-IV).[4]   (Muthoka Decl. at ¶12, Ex. E, p. 8).

---

Visual Processing.  Not only does this disability impact her performance, but Ms. Muthoka's excessive anxiety and worry about her slower processing speed. . . ." (Muthoka Decl. at ).
[4] The "WAIS-IV standardization sample comprises 2,200 individuals between ages 16–90, stratified into 13 age groups" and is therefore roughly indicative of the general population.  Allyson G. Harrison*, et al., Comparing Canadian and American Normative Scores on the Wechsler Adult Intelligence Scale-Fourth*

1    Consequently, as found by the evaluators in the April 1, 2019 psychological

2    report, Ms. Muthoka suffers from mental impairment due to a processing disorder

3    that creates a comorbid condition of a specific anxiety disorder of test anxiety and

4    which both combine to substantially limit her ability to perform the major life

5    activities of concentration and comprehension during the compressed environment

6    of a high stakes test.

7    As a result, Plaintiff is a person with a disability under the ADA in

8    accordance with 28 C.F.R. § 36.105(a)(iii).

9    B. *Plaintiff's Request for an Accommodation was Reasonable*

10    Plaintiff's requested accommodation is a reasonable and common

11    accommodation for high stakes tests.  NBME already grants Plaintiff a similar

12    reasonable accommodation of 50% extended time on her Subject tests.  (Muthoka

13    Decl.)  The regulations provide that entities should give "considerable weight to

14    documentation of past modifications, accommodations, or auxiliary aids or services

15    received in similar testing situations."  28 C.F.R. § 36.309(b)(1)(v).  Additionally,

16    Ms. Muthoka has been provided extended time accommodations by UCI.  (Muthoka

17    Decl. at ¶7 and Ex. B).

18    Moreover, Plaintiff's evaluators recommended a 100% extension on testing

19    time for Plaintiff, but Plaintiff is only seeking a 50% extension.   (Muthoka Decl. at

20    ¶12, Ex. E, p. 20)

21    Finally, NBME has granted other students up to 100% additional testing time,

22    thus indicating that a 50% extension of testing time is reasonable given Plaintiff's

23    evaluator's 100% extension recommendation. *Berger v. Nat'l Board of Medical*

24    *Examiners*, 2019 WL 4040576, *26 (S.D. Ohio 2019).

25

26    _____

27    *Edition*, 29 Archives of Clinical Psychology 737-746 at 738 (Oxford University
Press 2014).

28

C. *Plaintiff's requests were denied*

Despite the fact that NBME provides Plaintiff 50% accommodations on the Subject examinations, it denied her request for a reasonable accommodation here. (Muthoka Decl. at ¶15).

As a result of the foregoing, Plaintiff has set forth a likelihood of prevailing on the merits of her action.

## II.   ABSENT AN INJUNCTION, PLAINTIFF WILL LIKELY SUFFER IRREPARABLE HARM

Plaintiff is likely to suffer irreparable harm if a mandatory injunction does not issue. The likely loss of the opportunity to pursue one's chosen profession has been held to constitute irreparable harm. *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1166 (9th Cir. 2011); *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 964 (N.D. Cal. 2013) (medical student diagnosed with anxiety disorders who completed significant amount of schooling likely to suffer irreparable harm by inability to participate in clinical rotations and earn medical degree during the pendency of the litigation, thus precluding her from advancing her professional career).

Additionally, out-of-circuit courts have found irreparable harm when a plaintiff is likely to suffer an interruption or suspension of higher education. *Berger v. Nat'l Board of Medical Examiners*, 2019 WL 4040576, *26 (S.D. Ohio 2019); *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677 (S.D. Ohio 2012); *Bonnette v. District of Columbia Court of Appeals*, 796 F. Supp. 164, 186 (D. D.C. 2011) ("The lost opportunity to engage in one's preferred occupation goes beyond monetary deprivation"); *Maczaczyj v. State of N.Y.*, 956 F. Supp. 403, 408 (W.D. N.Y. 1997).

Here, Plaintiff has one last opportunity to take the USMLE, Step 1 and pass or she will be dismissed from UCI. (Muthoka Decl. at ¶16). Once a student is

dismissed from a medical school, there is negligible chance for admission elsewhere and to go no to a career as a medical doctor.  (Muthoka Decl. at ¶18).  Plaintiff has attempted the USMLE, Step 1 twice without passing, and if she is not granted the requested accommodation, it is likely she will not receive a passing score and will be dismissed from medical school and thus unable to pursue her chosen profession.

## III.    THE BALANCE OF THE EQUITIES TIPS IN PLAINTIFF'S FAVOR

The potential harm to Plaintiff is career ending.  NBME will suffer no harm since it has previously granted other test takers 100% additional time.   *Berger v. Nat'l Board of Medical Examiners*, 2019 WL 4040576, *26 (S.D. Ohio 2019).  The balance of equities clearly tips in Plaintiff's favor.

## IV.    PUBLIC INTEREST FAVORS ISSUANCE OF INJUNCTIVE RELIEF

Congress has unequivocally stated the public interest is to ensure the eradication of disability discrimination.  *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011).  Here, because Plaintiff has established a likelihood of success on the merits, injunction relief should issue to protect the public interest in the prevention of disability discrimination.

## CONCLUSION

Plaintiff requests that the Court enter mandatory injunctive relief requiring Defendant to modify its existing policy to allow Plaintiff 50% additional time on the USMLE, Step 1 and expunge of all previous test attempts from NBME's records.

1

Dated: July 16, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LEIGH LAW GROUP, P.C.

/s/ Jay T. Jambeck

By:_____

Jay T. Jambeck
*Attorneys for Plaintiff*